**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

SIR MICHAEL DYESS,

      Plaintiff,

v.

NEIL MULLINS, et al.,

      Defendants.

Case No. 1:16-cv-910

Dlott, J.
Bowman, M.J.

**MEMORANDUM OPINION AND ORDER**

Pursuant to local practice, this prisoner civil rights case has been referred to the undersigned magistrate judge for pretrial management, and for initial review and a Report and Recommendation on any dispositive motions. Currently pending are four related motions by Plaintiff to amend his complaint and/or to compel discovery. Plaintiff has also filed a motion to extend the deadline for filing dispositive motions. For the reasons that follow, Plaintiff's motions to further amend and to compel discovery will be denied, but the motion to extend time for filing dispositive motions will be granted.

**I.    Procedural and Factual Background**

On October 25, 2016, the undersigned entered an Order that granted Plaintiff's motion to proceed *in forma pauperis* with a civil rights complaint against three identified Defendants (Neil Mullins, Correctional Officer Gifford, and Nurse Joiner), plus two John Doe Defendants that Plaintiff did not initially identify. (Docs. 10, 12). The Court also entered a calendar order that directed the parties to complete discovery by June 30, 2017, with dispositive motions to be filed by August 31, 2017. (Doc. 17).

Plaintiff's original complaint alleged that he was assaulted by other inmates "with

human bodily fluids projected out of clear shampoo bottles, and nasal spray bottles" on July 23, 2016, as Plaintiff walked down a corridor to use a telephone. (Doc. 11 at 7). Plaintiff further alleges that when he finished his phone call, he was "tricked" by another inmate into stopping in front of another inmate's cell, whereupon that unknown inmate accosted him by trying to punch him or slap him, and spit into Plaintiff's face "as C/O Mullins and C/O Gifford stood and watched at the front of K2 South 41 through 60 range." Plaintiff alleges that other inmates continued to project bodily fluids towards him as he walked down the corridor.

Plaintiff alleges that although he requested permission to shower off, C/O Gifford approached and told him to get into his cell, implicitly denying Plaintiff's request while stating: "You little bitch get into your cell now or I'll do more to you than these inmates!" (Doc. 11 at 5). Plaintiff alleges that when he instead began to walk toward the shower, C/O Mullins appeared and began to spray his facial area with O/C (pepper) spray, while calling him a "fucking stupid ass nigger." Plaintiff alleges that he held his arms out, closing his eyes, and felt the two correctional officers slam him into the steel siding along the threshold of his cell doorway. He alleges the officers sprayed him a second time with O/C spray and threw him into his cell.

Five minutes later, two John Doe Defendants (subsequently identified as Lt. Setty and C/O Bauer) arrived at his cell and escorted him to the infirmary, where they allegedly proceeded to punch him in the face and body for 2-3 minutes. (Doc. 11 at 5). Plaintiff asserts that Setty and Bauer told him to stop filing informal complaints on unspecified officers. He alleges that Nurse Joiner witnessed the attack by Setty and Bauer, took pictures, and stitched his head up from his earlier injury. (*Id.*). He alleges

that Defendant Joiner, as well as Defendants Setty and Bauer, were deliberately indifferent to his serious medical needs because they did not allow him to decontaminate himself or to shower off the pepper spray. (Doc. 11 at 6). Plaintiff alleges that he fully exhausted his administrative remedies concerning the events of July 23, 2016,[1] and attached several grievance forms to his complaint.

On January 10, 2017, the undersigned denied Plaintiff's motion seeking the appointment of counsel, denied a second motion by Plaintiff seeking the Court's assistance, and denied in part a third motion that sought discovery from the Defendants. On March 10, 2017, the undersigned denied a second motion to appoint counsel, but granted Plaintiff's motion to amend his complaint to issue service to two newly identified Defendants Lt. Setty and Correctional Officer Bauer. The same order denied two additional motions filed by Plaintiff as procedurally improper. (Doc. 27).

On March 24, 2017, Plaintiff filed a motion seeking to add several entirely new claims and three new Defendants to this case. (Doc. 29). On the same date, he filed a motion seeking to compel additional written discovery responses from the existing Defendants. (Doc. 30). Defendants filed responses in opposition to both motions. (Docs. 33, 34). On August 14, 2017, Plaintiff filed a new motion to amend/correct his complaint as well as a new motion seeking a ruling on his previously filed motion to compel. (Docs. 36, 37).

---

[1]Plaintiff alleges that he filed Informal Complaint Resolution forms ("ICRs") on July 18, 2016 (prior to the incident), as well as on July 28, 2016, and on August 4, 2016. (Doc. 11 at 3). He further alleges that he filed an appeal of a related disciplinary conviction.

## II. Pending Motions

### A. Plaintiff's Motions to File an Amended Complaint (Docs. 29, 36)

Two motions seek this Court's permission to file an amended complaint to include new "retaliation" claims and newly identified Defendants (Correctional Officers Tackett and Robertson, and Nurse Rider), based upon a new incident alleged to have occurred on January 30, 2017. According to Plaintiff, the two officers conducted a cell search on that date, and both physically and verbally assaulted him, stating specifically that they were doing so in retaliation for his prior complaint against "Gifford and Mullins," two of the Defendants on which Plaintiff's original complaint is based.[2] Plaintiff complains that after the assault, Nurse Rider was deliberately indifferent to his injuries and failed to permit him to decontaminate himself.[3]

The Defendants oppose the tendered amended complaint both on procedural grounds and on the merits, arguing that the tendered amendment would not withstand a motion to dismiss. Defendants complain that by adding new claims against newly proposed Defendants for an entirely separate incident, Plaintiff is attempting to file a "buckshot" complaint that avoids the procedural safeguards of the Prison Litigation Reform Act ("PLRA"), which safeguards otherwise discourage frivolous lawsuits. *See, generally George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Michaels Building Co. v. Ameritrust Co.*, 848 F.2d 674, 682 (6th Cir. 1988).

For example, under the PLRA, a prisoner may be precluded from proceeding

---

[2]Plaintiff alleges that proposed Defendant Tackett stated "how you like that Nigger" when he was returned to his cell after the cell search. While Plaintiff's hands were placed in the cuff port, Plaintiff alleges that C/O Tackett stabbed Plaintiff's wrist(s) with the cuff key, and further alleges that C/O Roberson thereafter sprayed him with pepper spray. (*See* Doc 29)
[3]Plaintiff also alleges that proposed Defendant Nurse Rider never came back to check on him after he told her what happened. (*Id.*)

without prepayment of a filing fee if the same prisoner has previously filed three or more lawsuits or appeals that have been dismissed as frivolous, malicious, or for failure to state a claim. *See* 28 U.S.C. § 1915(g). However, the rule only applies to an "entire action" and not to individual claims. Because the instant lawsuit has already survived initial screening and been permitted to proceed, Defendants argue that Plaintiff's attempt to add new claims that – if filed separately could result in a "strike" for failure to state a claim – should not be sanctioned. In addition, the PLRA – while permitting the filing of a lawsuit *in forma pauperis* without *prepayment* of a filing fee, does not excuse a prisoner from all payment of any fee. Instead, the PLRA requires the prisoner-plaintiff to pay the full filing fee for each lawsuit over time, in partial installments triggered whenever a prison account exceeds a minimum balance. If Plaintiff is permitted to amend to add the new claims to his existing suit, rather than being forced to file a new lawsuit for the unrelated claims, he would avoid owing a second filing fee.

The undersigned agrees that the tendered amendment should be denied on procedural grounds under Rule 20, because it is not sufficiently factually related to the initial complaint, is overly prejudicial to the existing Defendants, and would cause undue delay. Therefore, I find no need to review the tendered amendment on the merits, or to screen the new allegations under 28 U.S.C. § 1915 at this time.

By the time Plaintiff filed his first motion to amend his complaint to add the new Defendants and new claims, discovery had been underway for approximately four months, with three months remaining. Discovery closed on June 30, 2017, and dispositive motions are presently to be filed by August 31, 2017. Thus, Plaintiff's most recent motion to amend/correct his complaint has been filed well after the close of

discovery, and just two weeks prior to the current dispositive motion deadline. Aside from forcing Defendants to change the scope of discovery more than half-way through completion (as of the date of Plaintiff's first motion), or even following completion (as of the date of his second motion), Plaintiff's duplicate motions to amend should be denied because the proposed tendered amendment simply does not bear a sufficient factual relationship to the allegations and claims in the existing complaint.

That is not to say that there are not similarities between the existing complaint and recently tendered amendment. For example, the existing complaint alleges that five different Defendants (four correctional officers and a nurse) failed to protect Plaintiff and/or beat him up in retaliation for Plaintiff's prior conduct in filing informal complaints against unspecified correctional officers. In his tendered amendment, he again cites a retaliatory motive by two new and different correctional officers, this time allegedly based upon Plaintiff's filing of the instant lawsuit. In addition, Plaintiff's original complaint complains of Nurse Joiner's failure to treat his injuries after the July 2016 assault, including decontaminating him from pepper spray. In a similar fashion, his newly proposed amendment alleges the same conduct (failure to allow him to decontaminate and/or failure to tend to his injuries after the January 2017 assault) by Nurse Rider.

Nevertheless, these similarities are not sufficient under Rule 20 to show any common issues of fact with the existing action. To the contrary, the date of the two incidents are separated by a number of months, as well as by the dissimilarity of the parties involved, with the January 2017 incident involving an entirely new set of proposed Defendants. Plaintiff's allegation that the newly identified officers bore a

retaliatory animus that relates to the instant lawsuit is not sufficient to permit the amendment, considering the status of discovery and the record as a whole, and the potential prejudice to the existing Defendants.  Without considering such variables, a plaintiff could file virtually unlimited amendments that bear no relationship to the original claims and defendants, so long as he included a cursory allegation that the new incident was in "retaliation" for an existing lawsuit or claim.

As opposed to the potential prejudice to the existing Defendants caused by the addition of new and otherwise unrelated claims against a new set of Defendants, little prejudice will result to Plaintiff by requiring him to file a separate new complaint regarding the distinct January 2017 incident rather than appending the new claims to this case.  *Accord Hetep v. Warren*, 27 Fed. Appx. 308, 309 (6th Cir. 2001)(district court did not abuse discretion in denying amendment to allege new, unrelated claims against new defendants); *Barnes v. Morgan*, Case No. 1:11-cv-380, 2012 WL 147948 at *9-11 (S.D. Ohio Jan. 18, 2012) (R&R recommending denial of additional retaliation claim as insufficiently related to claims in original complaint, adopted at 2012 WL 8688997 (S.D. Ohio Mar. 14, 2012)).  Thus, Plaintiff's motion to amend to add claims relating to an entirely separate incident and involving three new Defendants will be denied.

### B.  Motions To Compel Discovery  (Docs. 30, 37)

This Court previously denied Plaintiff's prior requests for assistance in obtaining discovery from Defendants, explaining to Plaintiff that he was required to serve Defendants (or in this case, their counsel) directly with his requests.  (Docs, 18, 20, 21).

In his two motions to compel Defendants to further respond to his written discovery requests, Plaintiff states that he served his requests for the production of

documents on December, 13, 2013, but that Defendants did not provide full and complete responses to several requests. (Doc. 30). Unfortunately, although Plaintiff refers to attached copies of the requests and Defendants' objections thereto, Plaintiff has failed to attach copies of either of the referenced exhibits to his motion.[4]

In their memorandum in opposition to the motion to compel, Defendants first object under Rule 37 and Local Rules 37.1 and 37.2, arguing that Plaintiff has failed to attach a certification that he has fully exhausted all extrajudicial means of resolving the parties' dispute. (Doc. 34). Though technically true, Defendants also acknowledge that Plaintiff wrote to counsel seeking extrajudicial resolution prior to filing his motion to compel, and Defendants' alternative argument makes clear that the dispute is not amenable to extrajudicial resolution. For that reason, the Court will not – on this one occasion – require Plaintiff to undergo the formality of re-filing his motion to compel with the appropriate certification.

In terms of substance, Defendants represent that they have provided Plaintiff with over 100 pages of responsive documents that are relevant to his claims. For example, Defendants have provided Plaintiff with all grievance documentation submitted by Plaintiff and reports generated by ODRC staff that detail Plaintiff's rule violations. (Doc. 34, pageID #174). However, Plaintiff seeks "all incident reports, major misconduct reports, or any improper supervision reports" written <u>by</u> Defendants Gifford

---

[4]Defense counsel states that he has received four separate written discovery requests from Plaintiff, including "Interrogatories and Request for Production of Documents," "First Request for Production of Documents," a separately titled "Request for Production of Documents" and a fourth written request titled "First Discovery Request." Given the number of similarly titled requests for production of documents, counsel states that he cannot know with certainty which responses to which request(s) the Plaintiff seeks to compel further production. However, Defendants have responded based upon what appear to be reasonable assumptions concerning the additional responses sought by Plaintiff, based upon this Court's review of the pending motions.

or Mullins, or <u>about</u> Defendants Gifford or Mullins, by anyone, including any other inmates. Similarly, Plaintiff has requested "any and all write ups on Neil Mullins, C/O Gifford and Kathy [J]oiner about improper supervision or complaints on how they work," including but not limited to informal complaints (ICRs). Last, Plaintiff has requested "[a]ny and all grievances, complaints, or other documents received by prison staff on Defendant's [sic] Setty or their agents at S.O.C.F. concerning the mistreatment of inmates by these defendants, and any memoranda[,] investigative files, or other documents created in response to such complaints, since January 1, 2015." (Doc. 34 at PageID 175). In a follow-up letter sent by Plaintiff to defense counsel dated March 1, 2016, Plaintiff clarified that he is requesting "ALL I.C.R.'s on each Defendant…while working at S.O.C.F./ODRC employee from myself (which I received) and [from] all other prisoners that have complained…." (*Id.*) In Plaintiff's second motion to compel the same responses (Doc. 37), he reiterates that he is seeking virtually any and all documents that may relate to any of the Defendants, including "I.C.R. complaints, N.O.G.'s, or any other way they can be written up by a prisoner or co-worker," in order to provide proof of whether "they have been or not been brought in any other type of federal claim in this court or [in] any other [forum] and if so dates, times, and why and when since being employed at SOCF." (*Id.*)

Defendants partially objected, limiting their responses to documents concerning the July 2016 incident and/or Plaintiff's grievance(s) or similar documents against the identified Defendants. The undersigned declines to compel Defendants to produce additional responses to any of Plaintiff's requests, because they are not reasonably limited in time or scope to this litigation, and are overly broad and unduly burdensome.

9

Plaintiff has failed to meet his burden of articulating why he needs such broad information over either the various Defendants' entire length of employment with ODRC, or alternatively, during their employment at S.O.C.F., or even over a more limited scope in time (as defined by one of the requests) to dates on or after January 1, 2015. The incident at issue in this lawsuit is a single event that is alleged to have occurred between Plaintiff and the Defendants on July 23, 2016, involving alleged violations of Plaintiff's Eighth Amendment rights, and a possible First Amendment retaliation claim, on that date. He seeks relief for his "pain and suffering and mental pain and anguish due to the busted head I received by C/O's Gifford and Mullins, being sprayed with O/C spray repeatedly and receiving no medical attention for my burning eyes, burning skin, respiratory problems/chocking and beat up…being sprayed with O/C for no reason, and having my medical records falsified by SOCF medical staff." (Doc. 11, PageID at 61).

It is unclear how unrelated complaints over the years from other inmates would have any relevance to Plaintiff's specific claims in this case. Plaintiff's latest motion to compel makes clear that his request constitutes nothing more than an impermissible fishing expedition. (*See* Doc. 37 at 1,"If my motion is granted this [evidence] will play a huge part in the minds of the jury **if** these Defendants have a pattern of mistreating prisoners while housed in SOCF." (emphasis added)). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Furay v. Lvnv Funding, LLC*, No. 2:12-cv-1048, 2013 WL 12123867 at *1 (S.D. Ohio Aug. 5, 2013). Other courts evaluating similar requests by prisoner plaintiffs have denied such requests on grounds of relevance, and because responding to such requests is overly burdensome. Defendants have presented both objections here. *See*

*Williamson v. Hass*, 2014 WL 1652188 at *1 (E.D. Mich. Apr. 24, 2014); *Ammons v. Bell*, 2008 WL 426507 at * 2 (W.D. Tenn. Feb. 14, 2008); *see also Dearing v. Mahalma*, 2012 WL 524438 at *3 (S.D. Ohio Feb. 14, 2012) (medical records of other inmates not relevant); *Tate v. Campbell*, 2001 WL 1681112 at *5 (S.D. Ohio Sept. 13, 2001) ("complaints by other inmates about defendant Campbell have little or no relevance to plaintiff's claims against this defendant…" but permitting limited evidence of specific discipline imposed on Defendant during his employment).

The cases cited by Plaintiff on the issue of relevancy are not persuasive because they involve allegations of a municipal custom or policy of deliberate indifference against police departments, where related complaints were clearly relevant. *See, e.g., Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (2d Cir. 1996). By contrast, this case involves a single incident of Eighth Amendment violations against Plaintiff by certain correctional officers, not claims against a City at large. Plaintiff's argument that "prior acts" evidence is relevant and admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," (motion at 4, PageID at 152), fails to persuade for similar reasons, as the cited cases are distinguishable. For example, in *Barnes v. City of Cincinnati*, 401 F.3d 729, 741 (6th Cir. 2005), the prior acts evidence was admitted to show discrimination against a specific class of persons (transgendered or homosexual individuals) to support a plaintiff's Equal Protection claim. Plaintiff has not brought an "equal protection" claim here. Thus, Plaintiff fails to articulate how the requested evidence would relate to his claim that the force used by the defendant officers, in response to Plaintiff's alleged disobedience of their order to return to his cell, exceeded constitutional principles.

### C. Motion to Extend Dispositive Motion Deadline (Doc. 38)

On August 28, 2017, Plaintiff moved for an extension of time in which to file dispositive motions, "[d]ue to the extent of time that I've been in punitive segregation" without adequate access to his legal materials. Plaintiff requests a 60-day extension of time, or through October 31, 2017.[5]

Plaintiff does not provide any dates as to when he has been housed in segregation without adequate access to legal materials, so this Court cannot ascertain whether the segregation was a recent occurrence, whether Plaintiff continues to be housed in segregation, or even how many days Plaintiff has been so housed. Certainly, a sixty-day period of segregation would be atypical. In addition, the undersigned notes that discovery closed on June 30, 2017 after taking place over a seven month period. Throughout discovery and beyond, Plaintiff has maintained a very active motion practice. In fact, since March 24, 2017, Plaintiff has been able to file five separate motions, complete with citation to case law, including three motions filed within the last two weeks. Clearly, Plaintiff has not been wholly prohibited access to legal materials and writing implements.

While Plaintiff has failed to set forth in sufficient detail the circumstances that would constitute "good cause" for such a lengthy extension of time, the Court will nevertheless grant Plaintiff's motion. On August 31, 2017, Defendants filed a response in which they not only state their lack of opposition to the extension, but join in the request, articulating separate "good cause" reasons for the lengthy extension.

---

[5]Plaintiff previously represented that his release date is October 13, 2017, a date that would fall before the expiration of the lengthy extension now being sought by Plaintiff. (Doc. 25).

### III. Conclusion and Order

For the reasons stated, **IT IS ORDERED THAT:**

1. Plaintiff's motions to further amend his complaint (Docs. 29, 36) are **DENIED**;

2. Plaintiff's motions to compel discovery (Docs. 30, 37) are **DENIED**;

3. Plaintiff's motion for a sixty-day extension of the dispositive motion deadline (Doc. 38) is **GRANTED,** with the deadline for either party to file a dispositive motion to be extended to **October 31, 2017.**

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge