**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

SIR MICHAEL DYESS,

    Plaintiff,

v.

NEIL MULLINS, et al.,

    Defendants.

Case No. 1:16-cv-910

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

This prisoner civil rights case has been referred to the undersigned for a report and recommendation on the Defendants' pending motion for summary judgment. For the reasons that follow, I now recommend that summary judgment in favor of all Defendants be GRANTED.

**I. Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Rule 56(c) explains in relevant part that a party asserting that a fact cannot be

genuinely disputed must support the assertion by citing to "particular parts of materials in the record, including depositions, documents…affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials" or alternatively by showing that the adverse party "cannot produce admissible evidence to support the fact." This Court must consider the cited materials, but "may" consider other materials in the record. Rule 56(c)(3).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-49. The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252.

Applying the relevant standards, and drawing all *reasonable* inferences in Plaintiff's favor, I turn to the facts alleged by Plaintiff in this case.

## II. Undisputed Facts and Allegations

Plaintiff was released from state custody on October 13, 2017,[1] but filed this pro se complaint *in forma pauperis* while he was incarcerated at SOCF. Plaintiff's complaint alleges that four correctional officers (Mullins, Gifford, Setty, and Bauer) used excessive force against him on the morning of July 23, 2016. In addition, Plaintiff alleges that Defendant Nurse Joiner, as well as Defendants Setty and Bauer, exhibited deliberate indifference to his serious medical needs by failing to permit him a shower following the

---

[1] Doc. 44-7, Greene Dec. at ¶5. Plaintiff filed a Notice indicating his change of address as of that date. (Doc. 41).

2

use of O/C spray. The Defendants have filed a video recording,[2] which has been viewed in addition to other evidence filed by both parties, in order to determine the facts of this case for purposes of the pending motion, with all reasonable inferences drawn in Plaintiff's favor.

On the morning in question, Plaintiff was released from his cell to use a telephone located at the end of the hallway of his cell block. Plaintiff asserts that other inmates threw bodily fluids and objects at him while he walked toward the phone, but that Plaintiff did not react. The video, which begins at the outset of Plaintiff's phone call, shows that Plaintiff completed his call at approximately 9:50 a.m. Defendants Mullins and Gifford watched Plaintiff from a distance at the opposite end of the corridor, out of the camera's view. After his call, Plaintiff walked slowly back toward his cell, stopping to interact with several inmates confined to their cells along the way.

Mullins and Gibbons observed Plaintiff "antagonizing other inmates, and that he even attempted to spit on another inmate." (Doc. 44-6, Mullins Dec., at ¶4; Doc. 44-9, Gifford Dec. at ¶4). Plaintiff denies attempting to spit on anyone; but he admits (and the video evidence confirms) that he approached another inmate's cell and was verbally engaged for 25-30 seconds, with the an unknown inmate appearing to throw paper or some similar object toward Plaintiff, which Plaintiff picked up. (*See* Doc. 44-1, DVD at 9:50:02 am through 9:50:32). Plaintiff then continued walking down the hallway, while continuing to verbally engage with other inmates. He again stopped near an inmate's cell. At approximately 9:50:56 on the videotape, am inmate, whose cell Plaintiff had approached and who Plaintiff appeared to be speaking with, swung his fist out of the

---

[2]The video recording filed of record contains no sound.

bars of the cell door toward Plaintiff. Plaintiff jumped back behind a yellow line (which appears to be a demarcation of a safe area outside the reach of celled inmates) and then continued to verbally engage other inmates. Plaintiff also appears to be laughing and physically skipping/dancing in a manner that appears designed to antagonize the inmates with whom he had been verbally engaged.

Observing this conduct, Defendants Gibbons and Mullins walked into view from the other end of the hallway. It is apparent from the video, which shows the two officers stopping in front of Plaintiff's cell and physically gesturing, and from their undisputed testimony, that they directed him to return to his cell. (Doc. 44-1; see also Doc. 44-6, Mullins at ¶4; Doc. 44-9, Gifford at ¶4). However, Plaintiff again stopped and turned toward another inmate's cell. Within a few seconds, at 9:51:25, Plaintiff moved closer to that inmate's cell, ostensibly to better converse, to the point that he again was within arm's reach. Plaintiff alleges that the inmate swung through the cell bars with a homemade knife, but missed. The video reflects some physical interaction, but there is no clear view of the details.[3] What is clear is that the altercation spurred both Defendants to immediately move from their stance in front of Plaintiff's cell, and to walk toward Plaintiff to quell the disturbance and escort him to his cell. (Doc. 44-1 at 9:51:26).

Plaintiff states that, due to the earlier actions of other inmates throwing bodily fluids on him, he asked for a shower. (Doc. 51-2 at 2). Defendant Gifford "attempted to

---

[3] In his response to summary judgment, Plaintiff states that Defendants did not sufficiently protect him from various inmates' attempts to spit on him or throw things at him on his walk to the phone, because Defendant Gifford was "paying no attention to me while I walked down the range." (Doc. 51-2, Plaintiff's Dec. at 1). Plaintiff also asserts that Defendants did not protect him from attempted attacks by other inmates on his return to his cell. However, no claim of deliberate indifference to Plaintiff's safety was stated in Plaintiff's complaint; and the new allegations are not relevant to this lawsuit.

4

obtain control over [Plaintiff's] person by holding his arm," and Plaintiff "physically resisted" and "said something to the effect of 'don't touch me.'" (Doc. 44-6 at ¶5; Doc. 44-9 at ¶5). Plaintiff avers he said: "No need to put your hands on, please go get a white shirt." (Doc. 51-2 at 2). Plaintiff admits that Gifford told him to calm down and also admits that Plaintiff "shook my arm loose of his grip," while continuing to request a shower. (Doc. 51-2 at 2). The video shows Plaintiff turning toward Gifford in what appears to be an argumentative or aggressive stance. (*See* Video at 9:51:32- 9:51:34). Based on Plaintiff's perceived resistance to immediately returning to his cell, Mullins administered a "short, controlled burst of OC Spray to his person." (Doc. 44-6 at ¶6; Doc. 44-9 at ¶6; Video at 9:51:36). Mullins applied "a second short, controlled burst" of OC spray based upon his assertion that Plaintiff continued to resist; Plaintiff states he was blinded from the first spray and was not actually resisting. (*Id*.; Video at 9:51:40).

Mullins and Gibbons forcibly directed Plaintiff to walk toward his cell. (*Id.* at ¶6; Video at 9:51:41). The video reflects a fluid situation during which Plaintiff was being forcibly directed toward his cell but not fully secured. During the altercation, Plaintiff's head contacted the cell bars, causing injury to the right side of his eye, just before the officers forced him into his cell.[4] Plaintiff alleges that Mullins and Gifford deliberately pushed him into the bars in order to punish him, whereas Defendants maintain that they "placed [Plaintiff] against the front of his cell in an effort to gain control over him, as he was still resisting." Within the same four second period, Defendants "force[d] [Plaintiff]

---

[4]Plaintiff also states in his Declaration in opposition to summary judgment that the impact "bust[ed] my ear drum to the point of being deaf in my left ear and me being unconscious." (Doc. 51-2 at 2). However, the video evidence does not support the loss of consciousness, and neither contemporaneous medical records nor other evidence corroborates any eardrum injury.

into his cell." (Video, 9:51:41-9:51:45). Defendants state that they administered a third blast of OC Spray when Plaintiff "attempted to spit" at them after being forced into his cell. (Docs. 44-6 and 44-9 at ¶¶7-8). Plaintiff denies attempting to spit. (Doc. 51-2 at 2). Defendants Mullins and Gifford then left the area and reported the use of force incident.

Six minutes later, Defendants Setty and Bauer arrived to transport Plaintiff to the infirmary. (Doc. 44-5, Dec. of Setty at ¶¶4-5). Plaintiff alleges that Defendants Setty and Bauer punched him repeatedly for "2 to 3 minutes" while he was in the infirmary, in view of Nurse Joiner. However, Defendant Joiner, who provided medical treatment to Plaintiff, attests that she observed no such incident or injuries that would be consistent with that allegation. (Doc. 44-11 at ¶8). Defendant Joiner states that when Plaintiff arrived, he complained only that he had "hit his head" and that an officer "used OC." (Doc. 44-11 at ¶5). Defendant Joiner cleaned and treated a 2 centimeter laceration over Plaintiff's right eye with skin glue. (Id. at ¶¶6-7). The laceration was the only apparent injury, and Plaintiff exhibited no other signs of physical distress. (Id. at ¶6).

Nurse Joiner did not offer Plaintiff a shower to decontaminate himself from the OC Spray. (Doc. 44-11 at ¶10). However, Defendant Setty states that Plaintiff accepted a decontamination shower and fresh clothes upon his discharge from the infirmary, (Doc. 44-5 at ¶5). While Plaintiff argues he was not provided adequate decontamination, he also declares that Defendant Setty put him in a shower where the "water was so extremely hot plus the wheater [sic] and the mase [O/C spray] I passed out [in] the shower. White Shirt Setty woke me back up and got me out of the shower."

6

(Doc. 51-2).[5]

As a result of the incident, Plaintiff was charged and found guilty of four Rules violations: Rule 6 ("throwing, expelling, or otherwise causing a bodily substance to come into contact with another."); Rule 18 ("encouraging or creating a disturbance"); Rule 20 (Physical resistance to a direct order."); and Rule 60 ("Attempting to commit; aiding another in the commission of; soliciting another to commit; or entering into an agreement with another to commit any of the above acts"), but was adjudged to be not guilty of two charges (Rules 21 and 61). (Doc. 44-8 at 4). At his RIB hearing on July 27, 2016, Plaintiff made the following statement: "[W]hen I got out to use the phone, people were throwing piss and shit and spitting on me … I was on the phone and they continued. I didn't say anything. I didn't spit. He stuck his arm out and swung and missed me. I weaved but they didn't touch me. I asked the c/o for new clothes and he sprayed me." (Doc. 44-8 at 3). Plaintiff appealed his RIB convictions, denying causing a disturbance or "yank[ing] away from either C/O Gifford or C/O Mullins," or refusing to go back to his cell. (Doc. 44-8). Plaintiff maintains he did nothing to warrant the use of OC Spray or having his "head smashed against the bars." (*Id.*) Plaintiff's RIB appeals were rejected based upon the evidence, including the video record. (Doc. 44-8 at 6-7).

Plaintiff filed two informal grievances ("ICRs") against Defendants Mullins and Gifford in which he complained that they had employed excessive force.[6] However, he

---

[5]Plaintiff's Declaration contains additional and new allegations relating to a lack of a mattress, a lack of access to a toilet or water, and a claim that he was denied food for "almost 4 days." (Doc. 51-2 at 3). The referenced allegations are not relevant to any claim stated in Plaintiff's complaint against any of the named Defendants.

[6]In response to Defendants' motion for summary judgment, Plaintiff filed as exhibits two additional ICRs, but neither concerns the events of July 23, 2016. The first, ICR 7-16-283, alleges that Defendant Gifford tampered with Plaintiff's food and/or harassed him on July 18, 2016, (Doc. 51-4 at 13). The other

7

filed no informal grievance against Defendants Setty or Bauer, nor did he file a grievance against Defendant Joiner. In fact, Plaintiff never filed any grievance regarding the medical care he received at SOCF, or alleging a lack of adequate care.

## II. Defendants' Motion for Summary Judgment

### A. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust administrative remedies before filing suit in this Court. *See* 42 U.S.C. §1997e(a); *Porter v. Nussle*, 534 U.S. 516 (2002). In addition, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules" as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 90, 125 S. Ct. 2378, 2386 (2006); *see also Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 922 (2007). Defendants persuasively argue that they are entitled to judgment as a matter of law, because Plaintiff failed to fully and properly exhaust his claims through the available prison grievance procedures, as required by the PLRA.

The inmate grievance procedure in Ohio is comprised of three consecutive steps, described in Ohio Admin. Code §5120-9-31(K). The inmate is first required to file an Informal Complaint Resolution ("ICR") within fourteen calendar days of the incident that gives rise to the complaint. There is no dispute that Plaintiff complied with the first step, but <u>only</u> for his claims of excessive force against Defendants Mullins and Gifford.

Specifically, on July 28, 2016, Plaintiff filed ICR 8-16-65, in which he complained about the use of force by Defendants Gifford and Mullins. In that ICR, Plaintiff alleges

---

extraneous ICR, identified as ICR 8-16-98, concerns Plaintiff's complaints that his property has been stolen on multiple dates, and that Sgt. Stambaugh has failed to file a Theft Loss Report. (Doc. 51-4 at 16).

that he was "attacked by inmates" on the way to use the phone, and that once he finished with his call he was attacked again

> in front of both [Defendants Gifford and Mullins] by the inmates and then for no reason I was sprayed in my face several times and head pushed into the bars. Now I'm deaf. I've written numerous complaints on these C/Os that are retaliating for me [writing] them up. I fear for my life and I will not be going ANYWHERE near K-2 if so I will stay on hunger strike. These C/Os need to be fired… [W]ith my past I.C.R. [regarding] my items coming up missing I have sent Sgt. Stambaugh 3 Theft Loss Reports Not gotten a response yet. I used 2 N.O.G. Forms [regarding] all these complaints. Thank you.

(Doc. 44-10 at 5). However, ICR 8-16-65 contains no reference to Defendants Setty, Bauer, or Joiner, and does not include any allegations regarding medical care. On August 8, 2016, Captain Bell responded by indicating the incident would be investigated. (*Id.*)

On August 3, 2016, Plaintiff filed a second ICR that was largely duplicative of the first. In ICR 6-16-93, Plaintiff alleges, in relevant part:

> On 7/23/16 I was attacked by C/O Gifford and C/O Mullins. I am writing them both up for unauthorized use of force, harassment and discrimination and inappropriate supervision 5120-09-04 Conduct Report not accurate. I believe it's a use of harassment to cover up the fact that C/O Gifford is out to get me. Camera shows my true innocence to the alleged [allegations].

(Doc. 44-10 at 6). On August 9, 2016, Captain Bell responded to the second ICR by noting the duplication and that the use of force was already under review. (Doc. 44-10 at 6). Neither of the two ICRs filed concerning the alleged excessive use of force refers to Defendants Setty, Bauer, or Joiner, and neither contains any allegations regarding the alleged use of force in the infirmary or any complaint about the medical care Plaintiff was provided following the incident with Gifford and Mullins.

If dissatisfied with the resolution of his ICR, in order to comply with the second

step of Ohio's three step grievance procedure, an inmate is required to file an appeal. An appeal of an ICR is made by filing a Notification of Grievance ("NOG") within fourteen days of the disposition of the ICR. Ohio Admin. Code § 5120-9-31(K)(2). The NOG form requires the inmate to describe the corresponding ICR, and to attach a copy of the ICR he is appealing. Institutional records reflect that Plaintiff filed no timely or direct appeal of either of the two identified ICRs filed against Mullins and Gifford. (Doc. 44-10, Mahlman Dec. at ¶15).

Although he filed no timely NOG form that provided either a copy of, or identification of, the two ICRs filed in late July and early August against Mullins and Gifford, Plaintiff did file an NOG dated 10/5/16 and received on 10/12/16, logged as NOG 10-16-223. On that NOG, Plaintiff states very generally that he has "filed an informal complaint on Numerous with Numerous officials above C/O's [sic]." The same NOG complains about a use of force incident involving Mullins and Gifford and alleges that "Lt. Setty and Lt. Bower [sic] also attacked me the same day at medical after the 1st assault." (Doc. 44-10 at 7). Plaintiff alleges in the NOG that he fears for his life around Defendant Mullins, because he fears retaliation based on the prior attack of 7/23/16 and the fact that Plaintiff had, by the time of the October NOG, "written a lawsuit on the incident." (*Id.*).

The referenced NOG does not mention Nurse Joiner or include any complaints about inadequate medical care. The NOG was denied on 10/24/16 for multiple procedural deficiencies, including because it was untimely to the extent that it was an attempt to appeal either of the two ICRs against Mullins and Gifford relating to the July 23, 2016 incident. (Doc. 44-10 at ¶16). Specifically, the disposition states "Not within

the time limits," and states "You have failed to properly follow AR 5120-9-31 and you are not within the timeline to file on this matter." (Doc. 44-10 at 8). The response further states that the NOG is denied because Plaintiff "failed to file any Informal Complaint [ICR] on this matter and you state no specifics for this office to investigate." The response instructs Plaintiff "to read and follow AR 5120-9-31." (*Id.*) Finally, the NOG states that Plaintiff may file a further appeal to the Chief Inspector within 14 calendar days. See also Oho Admin. Code §5120-9-31(K)(3). It is undisputed that Plaintiff filed no such appeal.

Based on the record presented, the Defendants are entitled to judgment as a matter of law because there is no genuine issue of fact that Plaintiff failed to properly exhaust the claims presented through the prison grievance procedure. Plaintiff's response in opposition to summary judgment focuses solely on the alleged merits of his underlying claims, and does not address his failure to comply with the grievance procedure prior to filing suit. As a result of that failure, he is barred from seeking relief against any of the Defendants in this Court, and all Defendants are entitled to judgment on all claims asserted as a matter of law.

### B. Alternative Grounds for Judgment

Defendants present several alternative and additional grounds that they maintain support the entry of judgment in their favor. The undersigned declines to reach the alternative arguments based on Plaintiff's failure to satisfy the administrative exhaustion requirement of the PLRA.

### III. Conclusion and Order

Accordingly, **IT IS RECOMMENDED THAT** Defendants' motion for summary

judgment (Doc. 44) be **GRANTED**, and that this case be closed.

                                      *s/ Stephanie K. Bowman*
                                      Stephanie K. Bowman
                                      United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

SIR MICHAEL DYESS,

    Plaintiff,

v.

NEIL MULLINS, et al.,

    Defendants.

Case No. 1:16-cv-910

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).